# IN THE COURT OF APPEALS OF IOWA

No. 25-0389
Filed August 6, 2025

IN THE INTEREST OF A.G.,
Minor Child,

L.G., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

Judge.


A mother appeals the termination of her parental rights to her child.

**AFFIRMED.**


Michael A. Horn of Horn Law Offices, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and

guardian ad litem for minor child.


Considered without oral argument by Ahlers, P.J., and Chicchelly and

Sandy, JJ.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to her child, A.G., born in 2020.[1]  Upon our de novo review, we affirm.

## I.    *Background Facts and Proceedings.*

The Iowa Department of Health and Human Services (the department) became involved with A.G. after receiving "reports the parents were using cocaine while parenting, engaging in domestic violence in the presence of the child, and locking the child in rooms for extended periods of time."  And when the department investigator came to the parents' residence for her assessment, the parents were noncompliant and under the influence.  The investigator left the residence, with the intent of scheduling a meeting with the parents and seeking a court-ordered removal.  The parents avoided both the meeting and the department's attempt to remove the child, claiming they were out of town despite a witness seeing their vehicle at home.  Finally, the department was able to execute the removal with law enforcement, and A.G. was placed with her paternal uncle and his wife.  She was later adjudicated as a child in need of assistance.

After removal, both the mother and A.G. tested positive for cocaine metabolite, which the court found was indicative of ingestion, not just exposure.  While the mother did obtain a substance use evaluation and participated in treatment, the department was wary of the mother's purported progress.  Despite numerous positive drug screenings (or presumed positive, due to the mother's

---

[1] The State petitioned to terminate the parental rights of both the mother and father during the same proceedings.  But mere days after the termination hearing, the father passed away.  The juvenile court therefore only terminated the mother's parental rights to A.G.

tampering), the mother claimed her date of sobriety as October 2023. She attributed the positive drug tests to "contamination" and "cocaine residue on her furniture." Even after the termination hearing, the mother tested positive for cocaine, fentanyl, and other drugs.

But the mother made even less progress in addressing the domestic violence concerns. From the beginning of the proceedings, the mother refused to acknowledge the father's abuse and maintained that he was not violent "despite numerous reports of [his] aggressive behavior towards others" and his creation of a "'hit list' of persons involved in this case." While the mother denied she continued a relationship with the father, she was frequently caught by the department contacting and interacting with him. The department advised the mother multiple times that her relationship with the father and inability to address the domestic violence were barriers to reunification. But the mother ignored these warnings and continued to have daily contact with the father.

During the proceedings, the father likewise struggled with substance use, resulting in hospitalization. On one occasion, the mother was present while the father overdosed despite repeatedly telling the department that she had no contact with the father. Before calling emergency services, the mother took a photo of him passed out and drove ten minutes away to show the photo to her mother. This resulted in a thirty-minute delay before the father received emergency medical care.

Based on the parents' minimal progress, the State petitioned for termination of their parental rights, and a hearing occurred in November 2024. While the father consented to the termination, the mother did not. She testified that she had made

improvements, obtained stable housing and employment, and engaged in mental-health and substance-use services. But the department disagreed, testifying that the mother continued to deny its concerns and was not fully engaged in services. The hearing concluded, with the court promising to issue a written ruling.

But just five days later, the "[f]ather died, likely due to an overdose." In light of his passing and based upon a motion to reopen the record, another hearing occurred. The mother testified again, confirming her previous testimony but admitting she lied under oath about her relationship with the father. Despite previously stating multiple times that the two had ended their relationship, the mother continued to maintain contact with the father and was present for his passing, although she claimed she did not use illegal substances with him. The juvenile court terminated the mother's parental rights to the child, and the mother appeals.

## II.    Review.

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). While not binding on us, "[w]e give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses." *Id.* (citation omitted).

## III.    Discussion.

We use a three-step analysis to review termination of parental rights, in which we consider whether: (1) a statutory ground for termination has been met, (2) the best interests of the child support termination, and (3) any permissive exceptions to preclude termination apply. *In re A.S.*, 906 N.W.2d 467, 472–73

(Iowa 2018). The mother challenges each step in the analysis, so we consider each argument in turn.

A. *Statutory Grounds for Termination.*

The mother first challenges the statutory grounds for termination. The juvenile court terminated the mother's parental rights under Iowa Code sections 232.116(1)(d), (f), and (i) (2024); while the mother argues that none of these were met, we may affirm on any one ground supported in the record. *See A.B.*, 815 N.W.2d at 774. We therefore limit our analysis to section 232.116(1)(f), in which termination is warranted if the court finds:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother does not dispute that the State proved the first three elements for termination under section 232.116(1)(f). Instead, she argues the State failed to prove by clear and convincing evidence that "at the present time the child cannot be returned to the custody of the child's parents." Iowa Code § 232.116(1)(f)(4). "At the present time" means at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (interpreting the phrase as used in Iowa Code section 232.116(1)(h)).

The juvenile court found that A.G. could not be returned to her mother's custody, and we agree. The mother adamantly refused to address the domestic

violence which led to A.G.'s removal. Despite repeated warnings by the department that the relationship prevented A.G. from returning to the mother's custody, the mother continued daily contact with the father. But the mother was also consistently dishonest about their relationship, lying under oath and going to great lengths to conceal the relationship from the department. This included having two separate phones, directing others to lie on their behalf, and even obtaining a lease on an "apartment as a 'decoy,' to make it look as though the parents had separated." Even post-termination hearing, the mother continued her relationship with the father and was present for his death. The court expressly found the mother's inaction during the father's emergencies were "exceedingly concerning," and we share that concern.

The only area in which the mother excelled—visitation—was stalled by the mother's lack of cooperation in other areas. So the mother never graduated to unsupervised visits, which is a "necessary progression" for A.G. to return to her mother's care. *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020).

And while the mother made some progress with her substance-use and mental-health issues, the court did not find her claims of improvement wholly credible. The mother testified that her sobriety date was October 2023, but she tested positive for multiple illegal substances *after* this date. Even following the termination hearing, at which the mother again claimed sobriety, she had recently tested positive again for illegal substances. The court noted her lengthy history with substance use, tampering with drug tests, and providing "noncredible explanations" for the positive results in its decision to terminate. We share the

court's trepidation about the mother's self-proclaimed sobriety when the evidence indicates otherwise. We therefore similarly find that A.G. could not be returned to her mother's custody.

   *B. Best Interests of the Child.*

The mother also argues that termination is not in the best interests of the child; instead, she contends that a six-month extension or guardianship is what is best for A.G. When determining a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The "defining elements" in the best-interests analysis are the "child's safety" and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted). Based on the mother's failure to address the department's concerns which led to the removal, we find that termination is in A.G.'s best interests.

The mother argues that the father's death quashes the department's concerns, but we disagree. While the department expressly referenced the mother's relationship with the father as a barrier to reunification, its concerns focused on the mother's inability to recognize abuse and her lack of protective capacity for A.G. As the juvenile court noted, "[w]hile [the father] no longer poses a safety risk to the child, [the mother's] complete unwillingness to acknowledge her continued relationship with an individual who was actively using prevents her from meaningfully addressing the safety concerns related to such a relationship." The mother's refusal to sever her relationship with the father, who maintained a "hit list" of individuals involved in the proceedings and continued to use illegal substances,

does not convince us of her ability to provide safety for the child. *See In re A.G.*, No. 18-1161, 2018 WL 6131920, at *3 (Iowa Ct. App. Nov. 21, 2018) (finding termination is in the child's best interests when the parent "refused to acknowledge or address the concerns giving rise to removal").

Since being placed with her uncle, A.G. is "doing well" and receiving mental-health and speech services to meet her needs. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (considering the child's favorable integration into foster placement supports termination). But A.G., who was diagnosed with post traumatic stress disorder, displays "increased behaviors" following visits with her mother, such as being "more emotional" and "more aggressive." We decline to disrupt A.G.'s progress and deprive her of permanency "by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *See A.M.*, 843 N.W.2d at 112 (citation omitted). After nearly a year and a half of uncertainty, A.G. deserves permanency now, which termination and adoption by her uncle can provide.

As for the mother's proposed alternatives to termination, such as an additional six months to work towards reunification or guardianship, we find neither is warranted. The juvenile court may grant a six-month extension to the parent when "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). By the termination hearing, the mother had already been given fourteen months of services with limited progress; based on her history of instability, we do not find that an additional six months would change the outcome. *See A.B.*, 815 N.W.2d at 778 (considering "the parent's past performance" to determine "the quality of the

future care that parent is capable of providing" (citation omitted)). And "guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (citation omitted). Given A.G.'s young age and the relationship between the mother and the potential guardian, which the court noted had deteriorated after the mother made "derogatory comments towards [the placement]," we find that guardianship is not appropriate in this case. *See id.* at 478 (considering "the age of the child" and the parent-guardian relationship when finding guardianship was not in the child's best interests). A.G.'s best interests are better served through termination and adoption.

*C. Permissive Exception to Termination.*

The mother asks us to decline to terminate based on the parent-child bond. *See* Iowa Code § 232.116(3) (providing a discretionary exception to termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). While there is evidence in the record of their bond, this is outweighed by the mother's inability to care for her child and A.G.'s need for safety and stability. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) (considering "whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs"). The court expressly found that "[w]hile [the mother] loves this child, she repeatedly, intentionally, chose a relationship with an unsafe individual over this child." We agree and place A.G.'s safety first. Accordingly, we decline to apply an exception to termination.

*IV.* **Disposition.**

Because a statutory ground for termination was met, termination is in the best interests of the child, and we decline to apply any alternatives or permissive exceptions to prevent termination, we affirm the termination of the mother's parental rights to her child.

**AFFIRMED.**